Alvin J. KRUG et al., Appellants
(Plaintiffs below),

v.

Alexander REISSIG, Appellee
(Defendant below).

No. 3949.

Supreme Court of Wyoming.
Aug. 24, 1971.

R. Michael Mullikin of Lathrop, Lathrop & Uchner, Cheyenne, for appellants.

William A. Riner, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiffs commenced an action against the defendant Alexander Reissig, the surviving husband of Eva E. Krug Reissig, seeking to quiet title to certain real property described as "All of Section 27, Township 14 North, Range 60 West of the 6th P. M., in Laramie County, Wyoming" and to reform certain instruments relating to royalty interests in the said lands and certain of the parties' interests in the funds impounded by the purchaser of the oil and gas produced amounting to approximately $33,223. From an adverse judgment the plaintiffs appeal.

After the pleadings were closed the parties entered into a stipulation of the facts, and a brief summary thereof will suffice for purposes here. P. J. Krug, father of the plaintiffs, died intestate in the year 1928 as the record owner of the premises involved. His estate was never probated,

and although some effort was made to clear the title, that was never accomplished until 1951 when the plaintiffs quitclaimed all of their right, title and interest in the real estate to their mother, Mrs. Reissig. In the meantime, in the year 1943, Mrs. Reissig and the defendant were married and lived together until Mrs. Reissig died on September 21, 1968. In 1961 the Reissigs executed an oil and gas lease covering the said lands and retained a one-eighth royalty interest in the oil and gas produced and saved. Discovery of oil and gas in commercial quantities was made and production commenced in the early part of the year 1963. On August 29, 1966, the Reissigs executed a warranty deed wherein it was recited that the Reissigs were "wife and husband" and "grantors" and conveyed the premises to the plaintiffs subject to the reservation, "The Grantors reserve unto themselves and to the survivor of them, a life estate in the above-described property." On July 31, 1968, the Reissigs executed four instruments entitled "Assignment of Overriding Royalty Interest" and it was agreed that said instruments should be treated as collective assignments of one-half of the royalty interest in the lands rather than as the assignment of an overriding royalty interest.

The issues submitted were:

(a) Was the reservation in the deed effective to convey to the defendant a life estate in the property and in the oil and gas produced therefrom?

(b) What was the share of the parties in the funds impounded by the purchaser of the oil and gas amounting to approximately $33,223?

Thereafter the trial court set the matter for hearing and in due time entered judgment wherein among other things it was declared that defendant was the owner of a life estate in the said premises and as such was entitled to the rents and profits of the surface of said land together with a one-sixteenth royalty interest and one-half of the accumulated and undistributed funds in the sum of $33,223.

Our immediate concern involves issue (a), the plaintiffs contending that defendant was a "stranger to the title" for the reason there were no words of grant in the deed and consequently under the rule of common law the defendant took nothing by the attempted reservation. The defendant, on the other hand, contends that he was not a "stranger to the title" but on the contrary came within the limitation of the common-law rule in that such a reservation is effective during the life of the wife and husband or the survivor of them.

While we touched upon these respective contentions in the general discussion in Burnell v. Roush, Wyo., 404 P.2d 836, and pointed out certain generally recognized rules of the common law and the limitations of the rule, our consideration was necessarily confined to the theory of all parties that plaintiff did or did not acquire a one-fourth interest as a tenant in common to the minerals excepted from a deed executed during coverture by the owner-husband and his spouse, who were later divorced. Consequently, even though both parties take comfort from Burnell, we think the case is not particularly helpful. No life estate was involved, whereas the precise question now presented is whether or not the reservation is effective insofar as conferring a life estate on the nonowner surviving spouse.

The divergent views of the parties are aligned. The plaintiffs rely upon Ogle v. Barker, 224 Ind. 489, 68 N.E.2d 550, 555; Leidig v. Hoopes, Okl., 288 P.2d 402; and probably Ryan v. Fort Worth National Bank, Tex.Civ.App., 433 S.W.2d 2, which in substance holds that the nonowner-husband was a "stranger to the title." Aside from general authority, the defendant relies upon Saunders v. Saunders, 373 Ill. 302, 26 N.E.2d 126, 129 A.L.R. 306; Glasgow v. Glasgow, 221 S.C. 322, 70 S.E.2d 432; Board of Missions of Methodist Episcopal Church, South v. Mayo, 6 Cir., 81 F.2d 449; and Derham v. Hovey, 195 Mich. 243, 161 N.W. 883, 21 A.L.R. 999, which in substance holds that a limitation is engrafted upon the English common law in favor

of a life estate in the nonowner surviving husband.

■ Under the circumstances it may not be amiss to recall Judge Blume's discussion in the early case of In re Smith's Estate, 55 Wyo. 181, 97 P.2d 677, 681, with respect to adoption of the common law as reflected by what is now § 8–17, W.S.1957, wherein it was said:

"* * * The common law is not exactly the common law of 1607. Many, and probably most of the rules of the common law of 1607, aside from equitable rules and aside from fundamental maxims, have been modified by judicial decisions. And that is true with the rule under discussion. Our statute (Sec. 26–101 [R.S.1931]) [now § 8–17, W.S.1957] does not state what are the judicial decisions to which reference is made. However, it is, and has been, the constant practice of courts in common law jurisdictions to freely cite cases from other common-law courts, and we take it that the legislature had in mind the judicial decisions of all of the various jurisdictions. The cases may differ; one court may take one view, another another. Hence we cannot consider these various decisions as the law in this state, but as interpretations of the common law, *and we are at liberty to adopt that interpretation which seems to be the best.*" (Emphasis supplied.)

When that is done it would appear that the trial court's decision was correct. There are several reasons why this is so.

Regardless of the approach as reflected by the annotation, 129 A.L.R. at 310, et sequitur, the fact remains that the great weight of authority favors a life estate in the nonowner surviving husband. Little would be gained by analyzing the approach except we need not speculate as to the facts. It is unquestioned that both wife and husband joined in executing the deed and reserved a life estate in themselves or the survivor of them. By way of recent general authority, 28 Am.Jur.2d, Estates, § 67, p. 161, it is said:

"* * * In a number of instances it has been held or recognized that a deed executed by the owner of the property and his or her spouse, with an attempted reservation or exception of a life interest in favor of the spouse, is effective as such in favor of the spouse during the latter's life. * * *"

Of interest is the comment, Annotation 129 A.L.R. at 315:

"The frequency with which life estates are sought to be reserved to the owner of land and his spouse suggests the establishment of a long practice in that connection [citing Bryan v. Bradley (1844), 16 Conn. 474]."

To the same effect is McRoberts v. Copeland (1866), 85 Tenn. 211, 2 S.W. 33, 34.

Reverting for the moment to the interpretation of the common law, if the intention of the wife and husband with respect to the deed is apparent, which is unquestioned, the instrument will be construed without regard to technical rules as an effective reservation of a life estate in the nonowner surviving husband. Saunders v. Saunders, supra.

■ Consequently we hold that the deed conveying the premises to plaintiffs subject to the reservation created a life estate in the defendant. With respect to royalty interest the trial court in keeping with the agreement of the parties reformed the four instruments entitled "Assignment of Overriding Royalty Interest" and decreed that each of the plaintiffs received a one-sixty-fourth royalty interest in the oil and gas from the lands in question, or collectively received a total of one-sixteenth interest. It did not, however, decree that the plaintiffs had any right, title or interest in the remaining one-sixteenth royalty but on the contrary declared that the defendant was the owner of a one-sixteenth royalty interest in the lands in question. Here again we hold that the trial court's decision was correct, and it necessarily follows that the defendant is also entitled to one-half of the funds impounded.

Affirmed.